## JOHN M. BAKER v. THE STATE.
### *No. 6526. Decided May 29.*

**1. Indictment.**—To the indictment transferred from the District to the County Court it was objected that the printed endorsement on the back, to-wit, "Certified copy of indictment, class No. 2," shows the same to be a copy and not the original indictment. But *held* that the said endorsement being neither signed nor otherwise authenticated, the objection is not well taken.

**2. Carrying Pistol—Evidence.**—See the statement of the case for evidence *held* to have been erroneously admitted on a trial for unlawfully carrying a pistol, because not relevant to any issue on trial.

APPEAL from the County Court of Johnson. Tried below before Hon. F. E. Adams, County Judge.

The conviction in this case was for unlawfully carrying a pistol, and the penalty assessed by the verdict was a fine of twenty-five dollars and twenty days in the county jail.

Mary R. Renfro was the first witness for the State. She testified that she was the mother of Annette Baker, the wife of Julius Baker, who was

the brother of the defendant. The witness's husband died in 1885, leaving to witness and his daughter Annette the home place in Johnson County, Texas, which place the witness continued to occupy as her homestead, her daughter Annette and her husband Julius Baker living with her until the morning of this alleged offense, when Julius separated from his said wife and left the place. The defendant at that time lived on his own place, a short distance from witness's place. On the morning of the separation of Julius and Annette—September 4, 1887—the witness saw the defendant armed with a pistol on her said homestead place, between 250 and 300 yards south of the house. He had the pistol in his hand, and so carried it to a horse that was being led by Julius Baker, and put it in a pair of saddlebags that were across the saddle on that horse. Julius Baker was then leaving witness's house, leading the horse with one hand and his two year old daughter Pearl with the other. Annette at the same time was clinging to the child.

The remainder of the testimony of this witness is the evidence referred to in the opinion and covered by the defendant's bills of exception Nos. 12, 13, and 15, and is summarized as follows: The State's counsel directed the witness to state "all that was said and done by Julius and John Baker at the house before Julius left with the child, and while Julius and John Baker, Jeff Nixon, and John Smith were there." She replied in substance that Julius Baker, Jeff Nixon, and John Smith came to the house and Julius Baker accused his wife Annette of maintaining criminal relations with one Will Olive. Annette denied the charge, when Julius called defendant and Will Olive, who were somewhere on the premises. They came to the house and Julius made Olive, in the presence of witness, accuse Annette of having bestowed carnal favors upon him, Olive. "They" then made Olive leave, and Julius seized the child (Pearl) and started off, Annette clinging to the child and screaming. The witness followed and attempted to prevent Julius from taking the child off. She did not see a pistol at that time. Before taking the child off Julius Baker entered the witness's house, opened her trunk, and seized and carried off all of her notes and accounts.

Annette Baker was the next witness for the State. She testified that her husband, Julius Baker, left her on the morning of September 4, 1887, taking their daughter Pearl with him. When he left the house of witness's mother with the child, witness followed him, struggling to prevent the removal of the child. When they reached a point about 250 yards from the house defendant joined them with a pistol, which he put in a pair of saddlebags on Julius's horse. When witness saw the pistol she released the child and seized the weapon. Julius then wrenched the pistol from her and in the struggle which ensued defendant seized the child and left. The defendant's fourteenth bill of exception shows that in answer to the same question propounded to Mrs. Renfro as to what was

said by Julius Baker, Nixon, and Smith, etc., this witness made substantially the same statement her mother made, adding that when under the direction of Julius Baker Will Olive admitted having maintained criminal relations with her, she denounced said Olive as a liar and threatened to kill him.    The State rested.

Julius Baker testified for the defense, in substance, that he was present when the alleged offense was committed by the defendant.    The pistol alleged to have been carried by the defendant on that morning was the pistol of John Smith, which the witness borrowed on that morning and left in a trough at the barn on Mrs. Renfro's place.    The witness separated from his wife on that morning.    When he started away from the house with his little daughter he requested the defendant to go to the barn, get the pistol and bring it to him.    He had put the pistol in the trough at the request of the defendant, who persuaded him not to carry it on his person.    Defendant went to the barn, got the pistol, and brought it to a point on Mrs. Renfro's place where the witness was, and put it in a pair of saddle bags on the witness's horse, and that was the extent to which he carried the pistol.    When defendant put the pistol in the saddlebags witness's wife seized it, and witness took it away from her and went on to his mother's house with his child.

On cross-examination the witness said that Jeff Nixon and Will Olive were two men who lived on Mrs. Renfro's place and cultivated crops. Olive went to a party on the night of September 3 and had not returned on the morning of the 4th.    Witness borrowed the pistol about daylight on the morning of the 4th, his purpose being to go after and bring Olive back to Mrs. Renfro's house.    Defendant persuaded him not to take the pistol with him, but to leave it in the barn.    Leaving the barn, witness went to Mrs. Renfro's house and got an account book and a note book, took them to the barn, and gave them to defendant.    Witness then got Nixon and John Smith and went to Burleson, about three miles distant, to get Olive.    Not finding Olive at Burleson, Smith went back, and witness, borrowing a pistol from Mr. Dotson, went with Nixon to the house of an uncle of Olive, where they found Olive, whom they took back to Mrs. Renfro's place.    Within a half mile of Mrs. Renfro's place they met defendant and John Smith.    Defendant and Olive went to the barn and witness, Nixon, and Smith went to Mrs. Renfro's house.    Defendant and Olive soon came to the house, and witness seized his child and left.

The subsequent proceedings were as stated by the witness on his examination in chief.    The witness admitted that in leaving Mrs. Renfro's he took off some notes and accounts, all of which he believed at the time belonged to him.    He discovered among them some which belonged to Mrs. Renfro, and those he sent back by defendant on the next day.    For some time prior to the said September 4, 1887, the witness had charge of Mrs. Renfro's place, and some of the said notes taken in the course of

business were payable to him and some to Mrs. Renfro.    Witness carried Dotson's pistol from Burleson to Mrs. Renfro's place.    Defense closed.

Mrs. Renfro, being recalled by the State, testified that Julius Baker assisted his wife in washing dishes after supper on the night of September 3, 1887.    He chatted pleasantly with her and appeared to be in high spirits.    He also spoke to witness on that night of his ardent love for his wife.    He slept with his wife on that night.    He and Nixon got up very early on the next morning.    Julius had no property of his own when he married Annette, and none when he left her except her separate property and its increase.    A day or two after the separation of Julius from Annette the defendant came to witness's house and took a mule from the field, which belonged on the place, and which he claimed to have bought from Julius.    Some of the notes taken by Julius were made payable to him and some to the witness.    On the day after the trouble the defendant brought back the notes payable to the witness individually, and a suit was now pending against Julius and others for the other notes.

Annette Baker, recalled by the State, testified that she suspected no assault upon her character by her husband until he came to the house with Nixon and Smith and accused her of infidelity.    She protested her innocence and her willingness to face any accuser.    Julius remarked, "You shall have the chance," stepped to the door and called "Ready!"    Thereupon defendant and Olive appeared, and the latter said: "Annette, we have been caught and will have to own up.    I have been too intimate with you."    The subsequent occurrences were as stated by witness when first on the stand.    Olive left the country at once, Julius telling him to "get!"    Julius did not tell defendant to go to the barn and get the pistol, and defendant did not go to the barn, nor come from the barn with the pistol.    On the contrary, he followed witness, Julius, and the child from the house with the pistol in his hand.

*Henry & Green,* and *M. A. Oatis,* for appellant.

*W. L. Davidson,* Assistant Attorney-General, for the State.

HURT, JUDGE.—This conviction was for carrying a pistol.    The appellant was indicted in the District Court and the papers certified down to the County Court.    When the case was called for trial in the County Court counsel for appellant moved to quash because there was printed on the back of said indictment the following:    "Certified copy of indictment, class No. 2."    This endorsement was not signed by any one.    It is contended that this endorsement shows that the indictment sent to the County Court was a copy.    Not being signed by the district clerk or authenticated in any manner we think it shows nothing.

Upon inspection of the statement of facts one would be at a loss to de-

termine what issue was being tried or who was the accused. Was Mrs. Julius Baker on trial for adultery? Was Julius Baker on trial for an affray? Or was John Baker on trial for carrying a pistol?

All the facts objected to by appellant and set forth in bills Nos. 12, 13, 14, and 15 were irrelevant and absolutely foreign to the issue presented in the indictment. The learned judge gives the following reasons for holding them competent: " Attention is called to the statement of facts to show that they were a part of the *res gestæ*—that the parties named, John and Julius Baker, were apparently acting in concert to the accomplishment of a certain design."

*Res gestæ* of what? To the pistol transaction? Certainly not; for the pistol transaction occurred after the acts and sayings complained of had transpired. Nor did these objectionable matters have the slightest relation to or connection with the subsequent carrying of the pistol.

Reason 2: Because "acting in concert to the accomplishment of a certain design." What design? The taking and carrying away of the little daughter? Or was it the intention and purpose of the Bakers to force Olive to accuse Mrs. Julius Baker of infidelity? Or was it the common purpose to seize the valuable papers belonging to Mrs. Baker? Or were the Bakers acting in concert in carrying the pistol?

Looking to the statement of facts we can clearly see a common purpose on the part of the Bakers with reference to the child, and there are strong circumstances tending to show that they acted together in requiring Olive to make the accusation against Mrs. Baker. But the facts complained of have not the slightest bearing upon the carrying of the pistol, and there was error in admitting them in evidence, because (1) irrelevant, and (2)strongly calculated to prejudice the case of appellant.

The charge is very voluminous, containing a great amount of foreign matters. With a view to another trial we will make these observations:

If appellant had on his person a pistol while in search for Olive, or had a pistol on his person while at Julius's place, he would be guilty. But if Julius Baker had left the pistol in the barn, and appellant merely went to the barn, got it, and handed it to Julius, he would not be guilty.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Judges all present and concurring.